## UNITED STATES v. HENCY et al.

(District Court, N. D. Texas, Dallas Division. February 10, 1923.)

No. 2586.

I. Conspiracy ⊚⇒43(5)—Monopolies ⊚⇒29—Overt acts need not be alleged in indictment under Anti-Trust Act, but must be alleged under general conspiracy statute.

Where an indictment for conspiracy contained two counts, the first charging a conspiracy in restraint of trade under Sherman Anti-Trust Act July 2, 1890 (Comp. St. §§ 8820–8823, 8827–8830), and the other charging an offense under the general conspiracy statute, Criminal Code, § 37

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(Comp. St. § 10201), the first count need not allege an overt act, but the second count must.

**2. Monopolies ⚞⚟12(1)—Anti-Trust Act operates against direct restraint of trade.**

The Sherman Anti-Trust Act of July 2, 1890 (Comp. St. §§ 8820–8823, 8827–8830), making unlawful a conspiracy in restraint of trade or commerce among the several states, which was enacted under the authority given by Const. art. 1, § 8, to regulate foreign and interstate commerce, was directed against an agreement or combination which tended to monopolize, and referred to restraint of trade which was direct, and not indirect.

**3. Criminal law ⚞⚟13—Criminal statute must be clear.**

Every criminal statute passed by either federal or state sovereignty must be so clear in its wording that every citizen may know just what it prohibits and what it punishes. ·

**4. Monopolies ⚞⚟16(1)—Agreement to disable engines ordinarily used in interstate commerce is not violation of Anti-Trust Act; "conspiracy to restrain trade."**

A conspiracy or agreement to disable railroad engines belonging to a railroad engaged in interstate commerce, but which were not at the time attached to any train, is not a conspiracy to restrain trade, within Sherman Anti-Trust Act July 2, 1890 (Comp. St. §§ 8820–8823, 8827–8830).

Tom Hency and others were indicted for conspiracy, and they demur to the indictment. Demurrer sustained, and case dismissed.

Henry Zweifel, U. S. Dist. Atty., of Fort Worth, Tex., for the United States.

McLean, Scott & Sayers, of Fort Worth, Tex., and Rasbury, Adams, Stennis & Harrell, of Dallas, Tex., for defendants.

ATWELL, District Judge. To this indictment, which contains two counts, the defendants have interposed general demurrers and special exceptions. In order that such criticisms may be understood, I set out the indictment herein, omitting the formal parts thereof:

"On or about the 2d day of September, A. D. 1922, at Cleburne, Johnson county, Texas, in the Dallas division of the Northern district of Texas, and within the jurisdiction of this court, one Tom Hency, and one W. T. Davenport, and one R. G. Edding, and one Charles Preston Groves, alias Charles Preston, and one Munsie Slagle, alias Max Gallaway, did then and there unlawfully enter into a conspiracy in restraint of trade and commerce among the several states of these United States, in violation of section 1 (1), chapter 647, of the Act of Congress of July 2, 1890, commonly known as the "Anti-Trust Act" (26 Stat. 209); that is to say, that they, the said Tom Hency, W. T. Davenport, R. G. Edding, Charles Preston Groves, alias Charles Preston, Munsie Slagle, alias Max Stone, J. O. Brown, alias J. O. Brooks, and Val Callaway did unlawfully conspire, combine, confederate and agree together, and with each other, and with various and divers persons whose names are to the grand jurors unknown, to do certain acts in restraint of trade and commerce among the several states, at Cleburne, Johnson county, Texas, as aforesaid, and at various other places in the state of Texas unknown to the grand jurors, namely, to injure and disable locomotives engaged and being used in interstate commerce, through and by means of the introduction into the boilers of said locomotives of quicksilver and other injurious chemicals and materials to the grand jurors unknown, at the Gulf, Colorado & Santa Fé Railway Company's, commonly called the "Santa Fe," shops, at Cleburne, Johnson county, Texas, in the Dallas division of the Northern district of Texas, and within the jurisdiction of this court, and at various other places to the grand jurors unknown, such locomotives so injured and disabled, and to

be injured and disabled as aforesaid, being in service and regularly used for the transportation of interstate commerce on the lines of railroad of the said Gulf, Colorado & Santa Fé Railway Company, commonly called the "Santa Fé," and upon the lines of various other railroads operating within the Northern district of Texas, and engaged in interstate commerce; and said conspiracy so entered into as aforesaid, at the time and place mentioned as aforesaid, was thereafter, on, to wit, on or about the 15th day of September, 1922, continued and renewed and put into effect, and attempted to be put into effect, at Cleburne, in said county of Johnson, state of Texas, in the Dallas division of the Northern district of Texas, and within the jurisdiction of this court.

"All of which acts of the said Tom Hency, W. T. Davenport, R. G. Edding, Charles Preston Groves, alias Charles Preston, Munsie Slagle, alias Max Stone, J. O. Brown, alias J. O. Brooks. and Val Callaway were contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the United States of America.

"Second Count.—And the grand jurors aforesaid, upon their oaths as aforesaid, do further present in open court and charge that heretofore, to wit, on or about the 2d day of September, A. D. 1922, in Johnson county, Texas, in the Dallas division of the Northern district of Texas, and within the jurisdiction of this court, one Tom Hency. W. T. Davenport, R. G. Edding, Charles Preston Groves, alias Charles Preston, Munsie Slagle alias Max Stone, J. O. Brown, alias J. O. Brooks, and Val Callaway did then and there unlawfully conspire, combine, confederate, and agree together to commit an offense against the United States at Cleburne, in said Johnson county, Texas, and at various other places in the state of Texas to the grand jurors unknown; that is to say, that they, the said Tom Hency, W. T. Davenport, R. G. Edding, Charles Preston Groves, alias Charles Preston, Munsie Slagle, alias Max Stone, J. O. Brown, alias J. O. Brooks, and Val Callaway, at the time and place aforesaid, did unlawfully conspire, combine, confederate, and agree together to hinder, impede, obstruct, prevent, and stop commerce among the several states of these United States, and to hinder, impede, obstruct, prevent, and stop the United States in its right, privilege, and duty to regulate, maintain, and protect interstate commerce, by injuring and disabling locomotives engaged and being used in interstate commerce through and by means of the introduction into such locomotives of quicksilver and other injurious chemicals and materials to your grand jurors unknown, in the city of Cleburne, in the said county of Johnson, state of Texas, and within the jurisdiction of this court, and at various and divers other places in the said state to your grand jurors unknown, such locomotives so to be injured and disabled as aforesaid being then and there in service and regularly used for the transportation of interstate commerce on the lines of railroad of the Gulf, Colorado & Santa Fé Railway Company System, commonly called the "Santa Fé," and various and divers other railway systems operating in the state of Texas, and in the Northern district of Texas, and engaged in interstate commerce, and said conspiracy so entered into as aforesaid, at the time and place mentioned aforesaid, was thereafter, on or about the 15th day of September, 1922, continued and renewed, and put into effect and attempted to be put into effect at Cleburne, in the said county of Johnson, state of Texas, in the Dallas division of the Northern district of Texas, and within the jurisdiction of this court, and thereafter, in pursuance of said unlawful conspiracy, and to effect the object of same, and after said unlawful conspiracy had been entered into the following overt acts were done:

"1. That according to, and in furtherance of, and in pursuance of said unlawful conspiracy, and to effect the object of same, and after said unlawful conspiracy had been entered into. on or about the 2d day of September, 1922, the said Tom Hency and Val Callaway went to Houston, Texas, and took into their possession a certain quantity of quicksilver, or some other chemical or material closely resembling quicksilver.

"2. That according to, and in furtherance of, and in pursuance of said unlawful conspiracy, and to effect the object of same, and after said unlawful conspiracy had been entered into, the said Tom Hency and Val Calla-

way, on or about September 4, 1922, transported a certain quantity of quicksilver, or some other chemical or material closely resembling quicksilver, from Houston, Texas, to Cleburne, Johnson county, Texas, in the Dallas division of the Northern district of Texas, and within the jurisdiction of this court.

"3. That according to, and in furtherance of, and in pursuance of said unlawful conspiracy, and to effect the object of same, and after said unlawful conspiracy had been entered into, on or about the 13th day of September, 1922, the said J. O. Brown, alias J. O. Brooks, Munsie Slagle, alias Max Stone, and Charles Preston Groves, alias Charles Preston, went to work in the Gulf, Colorado & Santa Fé Railway shops at Cleburne, Johnson county, Texas, in the Dallas division of the Northern district of Texas, and within the jurisdiction of this court.

"4. That according to, and in furtherance of, and in pursuance of said unlawful conspiracy, and to effect the object of same, and after said unlawful conspiracy had been entered into, on or about the 13th day of September, 1922, the said J. O. Brown, alias J. O. Brooks, Munsie Slagle, alias Max Stone, Tom Hency, and W. T. Davenport met together on a street in the city of Cleburne, Johnson county, Texas, in the Dallas division of the Northern district of Texas, and within the jurisdiction of this court.

"5. That according to, and in furtherance of, and in pursuance of said unlawful conspiracy, and to effect the object of same, and after said unlawful conspiracy had been entered into, on or about the 14th day of September, 1922, the said J. O. Brown, alias J. O. Brooks, Munsie Slagle, alias Max Stone, Tom Hency, and W. T. Davenport met together at a prearranged place on a certain street, the name of which is to the grand jurors unknown, in the city of Cleburne, Johnson county, Texas, in the Dallas division of the Northern district of Texas, and within the jurisdiction of this court.

"6. That according to, and in furtherance of, and in pursuance of said unlawful conspiracy, and to effect the object of same, and after said unlawful conspiracy had been entered into, on or about the 15th day of September, 1922, the said Tom Hency and the said W. T. Davenport furnished the said J. O. Brown, alias J. O. Brooks, Munsie Slagle, alias Max Stone, and Charles Preston Groves, alias Charles Preston, a quantity of quicksilver, at Cleburne, Johnson county, Texas, in the Dallas division of the Northern district of Texas, and within the jurisdiction of this court.

"7. That according to, and in furtherance of, and in pursuance of said unlawful conspiracy, and to effect the object of same, and after said unlawful conspiracy had been entered into, on or about the 15th day of September, 1922, the said Tom Hency stored on the premises occupied by one R. G. Edding, in the city of Cleburne, Johnson county, Texas, in the Dallas division of the Northern district of Texas, and within the jurisdiction of this court, a certain quantity of quicksilver or some other chemical or material closely resembling quicksilver.

"8. That according to, and in furtherance of, and in pursuance of said unlawful conspiracy, and to effect the object of same, and after said unlawful conspiracy had been entered into, on or about the 15th day of September, 1922, the said R. G. Edding had in his possession on the premises occupied by him in the city of Cleburne, Johnson county, Texas, in the Dallas division of the Northern district of Texas, and within the jurisdiction of this court, a certain quantity of quicksilver, or some other chemical or material closely resembling quicksilver.

"All of which acts of the said Tom Hency, W. T. Davenport, R. G. Edding, Charles Preston Groves, alias Charles Preston, Munsie Slagle, alias Max Stone, J. O. Brown, alias J. O. Brooks, and Val Callaway were contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the United States of America."

[1] It is quite evident that the first count seeks to present a simple conspiracy as thought to be denounced by section 1 of the Sherman Anti-Trust Act, legislation of Congress approved July 2, 1890 (Comp. St. §§ 8820–8823, 8827–8830), entitled: "An act to protect trade and

commerce against unlawful restraints and monopolies." The second count was manifestly intended to charge an offense against the general conspiracy statute of the United States, which is known as section 37 of the 1910 Code (Comp. St. § 10201). The first conspiracy does not require the allegation of an overt act; the second conspiracy does require such an allegation.

The general demurrer suggests that the indictment pleads no offense known to the laws of the United States; the special exceptions raise in various ways the suggestion that the indictment fails to allege that the introduction of quicksilver into the engines of the railway company would in fact result in disabling such engines. I am not at all sure that the indictment is free from criticisms. Perhaps it could be and should be more closely and more specifically drawn; but such suggestion is inconsequential, in view of the idea that I have with reference to the first objection urged, and it is sufficiently full to apprise the defendants of the charge made against them.

I have serious doubt that the Congress intended that the Anti-Monopoly Act now being considered, could be used or would be used as the basis for a prosecution against citizens so maliciously and wickedly inclined as to resort to damaging the rolling stock of a railroad engaged in the duties of a common carrier of passengers and freight between the states. I would not like to say that Congress did not have such power, since under the Constitution primary control of interstate commerce is lodged in that supreme law-making body, but I do say that, if it did intend that this anti-monopoly statute should cover such transgressions, it sparingly used words which might make the law easily understood so to prohibit.

Section 8, article 1, of the Constitution of the United States provides that Congress has power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." It is my understanding that the author of what is called the Sherman Law, under consideration, was of the opinion that this clause of the Constitution justified all parts of the bill. Of course, the word "transportation" was necessarily used in the act; otherwise the federal government would have no jurisdiction. "Interstate" was necessary, likewise, to bring it within the terms of the federal Constitution. During the debate on the Act Senator Sherman said:

"Associated enterprise and capital are not satisfied with partnerships and corporations competing with each other, and they invented a new form of combination, commonly called trusts, that seeks to avoid competition by combining the control of corporations, partnerships, and individuals engaged in the same business, and placing the power and property of the combination under the government of a few individuals, and often under the control of a single man called a trustee, as chairman or president. The sole object of such a combination is to make competition impossible. It can control the market, raise or lower prices as will best promote its selfish interest, reducing prices in a particular locality, and breaking down competition, putting advance prices at will, where competition does not exist. Its governing motive is to increase the profits of the parties composing it. The law of selfishness, uncontrolled by competition, compels it to disregard the interests of the consumer. It dictates terms of transportation companies. It commands the price of labor without fear of strikes, for in its field it allows no competitors. Such a combination is far more dangerous than any hereto-

fore invented, and when it embraces the great body of all corporations engaged in a particular industry in all the states of the Union, it tends to advance the price to the consumer of any article produced. It is a substantial monopoly injurious to the public, and by the rule of both common law and the civil law is null and void, and the just subject of restraint by the courts."

The history of the Sherman Law, compiled by A. H. Walker, of the New York bar, contains many citations from other distinguished senators, who took part in the discussion, which affords us illuminating information of the evil at which the statute was directed. Among such senators were Vest, of Missouri, Hiscock, of New York, Reagan, of Texas, Allison, of Iowa, and Teller, of Colorado, and in the House were many amendments and discussions in which Culberson, of Texas, and Bland, of Missouri, made observations which assist. In truth, Mr. Bland introduced in the House an amendment directed at every "contract," and, Senator Reagan introduced in the Senate an amendment which defined "trust," and denounced any combination which in any manner, established, or settled, the price of any article, commodity, or transportation, so as to preclude free and unrestrained competition among themselves in the sale of any such article or commodity.

[2] Likewise there was a discussion centering around such combinations as would result in indirect restraint, and we clearly draw the conclusion that indirect restraint was not aimed at. That section of that law (section 3) which declares the illegality of such sort of restraint reads as follows:

"Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce" among the several states or with foreign nations "is hereby declared illegal. Every person who shall make any such contract or engage in any such * * * conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof shall be punished." Comp. St. § 8822.

Manifestly this prohibition is against that character of "agreement" or "combination" which tended to "monopolize," and manifestly that sort of "restraint" which was direct and not indirect.

[3] It is almost an axiom under our system of government that every negation, every prohibition, every criminal statute passed by either federal or state sovereignty, shall be so clear in its wording as that every citizen may read it, and know just what it prohibits, and just what it punishes. I have considered with some care the opinion of that learned jurist who presided in the Western District of Texas in the trial of the case of United States v. Williams et al., not yet reported. Judge Smith did me the honor, upon my request, to forward to me a copy of his charge to the jury. His suggestion that any one who has conspired to commit a wrong, a crime, which results in another wrong, is likewise responsible for both wrongs, is a sound principle of criminal jurisprudence, and has caused me no little trouble in trying to make up my mind with reference to the matter; but I have finally concluded that this broader interpretation of the statute should catch my ear.

[4] I have sought wisdom from the statute, and the decisions construing it, which punishes those who delay the transit of the United States mails. The legislation is quite different, and is infinitely more

particular, and yet no judge could hold, in my opinion, that any one who might disable an engine, which was not connected and not engaged in actually hauling or transporting United States mails, would be held to have transgressed that statute. The disabling of an engine, which had not become a part of a transporting train or carriage, would be too remote to afford successful prosecution under that statute. Of course, it shocks any judge as well as any other citizen of this republic to realize that American citizens have so far forgotten themselves as to combine to injure the property that belongs to another, but my opinion is that the lawful way to treat such transgressions is to bring them to trial in and before that forum where there is no question about the jurisdiction, and the state government affords ample punishment for such acts of vandalism. The Sherman Law punishes those who combine in restraint of trade and not for sabotage. Silverstein v. Local No. 280, 284 Fed. 833.

I therefore hold that the indictment states no offense against the laws of the United States and dismiss it.